**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-01192-MSK-CBS

**KERRI COMPTON,**

  Plaintiff,

v.

**PAPPAS RESTAURANT, INC.,**

  Defendant.

_____

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION
FOR SUMMARY JUDGMENT**
_____

  **THIS MATTER** comes before the Court pursuant to Defendant, Pappas Restaurant, Inc.'s ("Pappas"), Motion for Summary Judgment (**#17**), Plaintiff, Kerri Compton's Response (**#20**), and Pappas' Reply (**#23**).

## I. FACTS

The material facts are undisputed or where disputed, the evidence is construed most favorably to Ms. Compton. They are summarized briefly here, but discussed in more depth as part of the Court's analysis.

  Ms. Compton was employed as a server and bartender at a Pappas' restaurant in Colorado. During 2012, Ms. Compton complained to at least one supervisor that a customer, Stan Mills, was sexually harassing her. No action was taken by Pappas.

In December 2012, Ms. Compton failed to report to work for a scheduled shift. Three days later, Pappas received a poor online review from a customer complaining of Ms. Compton's service. Citing these two infractions, Pappas terminated Ms. Compton's employment.

Following the termination, Ms. Compton called Pappas' human resources department. Though she admitted that she was not helpful to the customer who authored the poor review, she claimed that her poor service stemmed from her annoyance at Mr. Mills' harassment. Pappas conducted an investigation into Ms. Compton's complaints of sexual harassment by Mr. Mills, but was unable to conclusively resolve the issue. Electing to give Ms. Compton the benefit of the doubt, Pappas reinstated Ms. Compton to her original position and banned Mr. Mills from the restaurant. Ms. Compton has no grievances with how Pappas' management handled this aspect of her employment.

In May 2013, Ms. Compton filed an EEOC charge against Pappas, alleging retaliation by Ms. Henderson, Ms. Woods, and Ms. Hollon, because they "believed that [she] had used the sexual-harassment card to get reinstated." The retaliation took the form of banning Ms. Compton from storing food brought from home in Pappas refrigerators and taking breaks during her shift in order to eat, and reduction of her scheduled shifts. Ultimately, Ms. Compton looked for a new job, was offered a position at Xcel Energy, and resigned on August 1, 2013.

## II.  JURISDICTION

In her Complaint (**#1**), Ms. Compton asserts that Pappas retaliated against her for engaging in protected activity, in violation of Title VII, 42 U.S.C. § 2000(e)-2, ultimately resulting in her constructive discharge. This Court exercises jurisdiction over Title VII, 42 U.S.C. § 2000e-2 actions pursuant to 28 U.S.C. § 1331.

Pappas moves for summary judgment on the grounds that Ms. Compton cannot establish a *prima facie* claim for either retaliation or constructive discharge.

### III.  LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where there are no genuine disputes of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A factual dispute is "genuine" if the evidence presented in support of and in opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party, but may disregard "mere allegations," "conclusory and self-serving affidavits" or inadmissible evidence. *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir 2004); *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1360-61 (10th Cir. 1997); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995).

Substantive law governs the elements that must be proven for a particular claim or defense, the standard of proof, and which party bears the burden of proof. *See Anderson*, 477 U.S. at 248; *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). Where the moving party does not bear the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or claims that the non-moving party is obligated to prove. *See* Fed.R.Civ.P. 56(c)(1)(A); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). Once the moving party has met its burden, the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry,* 199 F.3d at 1131. If there is

insufficient evidence from which a reasonable fact-finder could find for the non-moving party as to each element of its claim, summary judgment is proper. *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

## IV. RETALIATION

Title VII retaliation claims are analyzed pursuant to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04( 1973). *See Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998). The employee bears the initial burden to present a *prima facie* case. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). If the employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse actions. *Jones*, 349 F.3d at 1266. The burden then returns to the employee to demonstrate pretext by showing the proffered reason is untrue and the real reason for the action was retaliation. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1120 (10th Cir. 2000).

### A. *Prima Facie* Case

To establish a *prima facie* case for retaliation in violation of Title VII, an employee must present evidence, that if true, establishes that (1) she engaged in protective activity; (2) her employer took material adverse action against her; and (3) the existence of a causal connection between the protected activity and the adverse action. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211-12 (10th Cir. 2008). Pappas disputes Ms. Compton's ability to establish any of the required elements.

1. Protected Activity

Protected activity encompasses any opposition by the employee to an employer's unlawful practices or actions. *Reinhardt v. Albuquerque Pub. Sch. Bd. of Ed.*, 596 F.3d 1126, 1132 (10th Cir. 2010). The employee need only have a reasonable, good-faith belief that the conduct being complained of is unlawful under Title VII. *Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984); *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269-70 (2001).

Ms. Compton contends that her post-termination complaint to Pappas' Human Resources Department about Mr. Mills' harassment was a protected activity. Particularly, she states that she "complained to the home office that I was really fired because I could not handle Mr. Mills." But in her deposition Ms. Compton suggests that she also engaged in additional protected activity before her post-termination complaint. She testifies that, "I told [an HR representative] that I was being harassed by [Mr. Mills] for multiple months and that the management did not protect me."

Though Pappas argues this is untrue, the Court adopts Ms. Compton's version of events, and that Ms. Compton's supervisors knew of purported sexual harassment and may have failed to intervene describes conduct potentially actionable under Title VII. This evidence is therefore adequate to show that Ms. Compton engaged in protected activity in or before December 2012.

### 2. Materially Adverse Action

To establish a materially adverse action, an employee must demonstrate that the action was significant enough that a "reasonable employee might be dissuaded" from opposing unlawful practices. *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68-69 (2006); *Somoza*, 513 F.3d at 1213-14. Though the Supreme Court takes a more liberal view of what might constitute an adverse action for retaliation purposes, not all retaliatory adverse action rises to the level of unlawfulness. *See White*, 548 U.S. at 68-69; *see also Somoza*, 513 F.3d at 1212. Trivial actions, "petty slights or minor annoyances that often take place at work" do not suffice.

*See White*, 548 U.S. at 68; *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212-13 (10th Cir. 2003). Routine reassignments, pay cuts, or reduced work responsibilities are also generally insufficient to prove materially adverse actions. *See Sanchez*, 164 F.3d at 532; *see also, e.g., Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996); *Cham v. Station Ops., Inc.*, 685 F.3d 87, 94-96 (1st Cir. 2012); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). But changes that significantly alter conditions of employment, such as those causing some economic or psychological harm, may suffice. *See White*, 548 U.S. at 71-72; *see also Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007). For example, a change in an employee's position that results in a lower salary or reduced compensation may be sufficiently adverse. *See Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010). Issuance of a disciplinary notice coupled with a new compensation scheme less favorable to the employee is also materially adverse. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007).

Ms. Compton's evidence in support of materially adverse action can be grouped into two categories: (1) barring her from taking breaks or eating during shifts and reprimanding her for doing so and (2) reducing her shifts. Pappas contends that neither amounts to an adverse action. The Court will address the sufficiency of each in turn.

### a. Preventing Ms. Compton from Eating or Taking Breaks.

In her deposition, Ms. Compton stated that she generally worked eight hour shifts and that she could not eat the restaurant's food because she needs gluten free meals. Before her termination, she "was allowed to bring leftovers from home, keep them in the bar cooler, and eat them for lunch, as long as [she] did so in the break room." But after she was reinstated, Ms.

Hollon "told [her she] could no longer eat food that [she] brought from home." She also testified that "the managers would throw [her] food away if they found it."[1]

Ms. Compton describes a particular example of this that occurred on or about April 5, 2013. Ms. Hollon issued Ms. Compton a formal written warning for eating a piece of a snack bar while she was on duty. In her affidavit Ms. Compton states that after her reinstatement, she was told by Ms. Hollon that "because I was a tipped employee, I would not be allowed to take breaks to eat." This appears contrary to Pappas' policy which, according to Ms. Henderson's deposition testimony, permits employees to "take breaks to eat as the press of business allows." Indeed, Ms. Henderson testified that employees may eat when they are "clocked in," so long as "it doesn't interfere with their work" or "it's not in the busy time."

Ms. Compton also directs the Court to an August 1, 2013 incident, when a customer gave her a cake. Ms. Compton states that she asked the kitchen manager where she could store it, and was told to put it in the "cocktail room," which she did. She testified that Ms. Henderson immediately went into the room, yelled at Ms. Compton, and threw the cake in the trash. Ms. Henderson conceded that this occurred (although she states that the cake was left in the room for some fifteen minutes before she acted), but explains that the cake was thrown out because Ms. Compton "left it in an area she wasn't supposed to be eating in front of guests."[2] In her affidavit, Ms. Compton explained that she was so "horribly embarrassed by the incident and [she] decided to resign that night."

---

[1] Pappas does not definitively dispute whether her food was thrown away, but contends that if it was it was pursuant to policy.

[2] The record is conflicting as to whether or not Pappas permitted employees to use the wine room to store or eat food and whether the "cocktail room" where Ms. Compton put the cake is different from the "wine room." Ms. Henderson testified that the two rooms where employees were allowed to eat were the break room and the banquet room; she expressly stated that employees could not eat in the wine room, "which is a display room basically." Ms. Hollon, on the other hand, testified that employees could eat in the break room, the banquet room, or in the wine room, so long as customers are not present.

As a result of her supervisors' actions, Ms. Compton stated that she lost twelve pounds and often felt weak from lack of nutrition. It is not unreasonable for an employee working an eight hour shift to need to eat, and to be able to eat food acceptable to her. This was Pappas' policy and practice with regard to Ms. Compton until she was terminated and reinstated. Then Pappas' policy toward Ms. Compton apparently changed – no longer could she store food that she could eat, no longer could she take a break to eat. If a reasonable employee was forced to work an eight hour shift without food or break, he or she might well be dissuaded from reporting unlawful conduct by its employer.[3] Thus the Court is satisfied that Ms. Compton presented sufficient evidence that, viewed in the light most favorable to her, demonstrates a materially adverse action.

### b.     Shift Reduction

The Court next addresses whether the reduction in the number of Ms. Compton's shifts constitutes an adverse action. Pappas contends that this did not amount to materially adverse action because 1) Ms. Compton was at least partially to blame for the reduction in her shifts; and 2) it was not as significant of a reduction as Ms. Compton contends.[4]

It is undisputed that in May 2013, Ms. Woods created a new schedule to accommodate changing school obligations of its employees, nor that Ms. Compton was scheduled to work a Sunday shift after having told her supervisors that she could not work that shift. When the problem was brought to the attention of Ms. Compton's supervisors, she was removed from the

---

[3] The Court emphasizes that it does not consider the April 5, 2013 write-up of Ms. Compton for eating while behind the bar an adverse action. It appears undisputed that Pappas' policies prohibit employees from eating while in the presence of customers, and Ms. Compton does not dispute that customers were present at the time of the incident. Even assuming Ms. Compton's supervisors improperly denied her eating breaks, Ms. Compton was nevertheless obligated to comply with uniformly-applied company rules.

[4] Pappas provided a document it contends shows that Ms. Compton "could have worked an average of 26.7 hours per week in 2012 and 26.0 in 2013," which the Court assumes is meant to demonstrate that Ms. Compton's reduction in hours was not as drastic as she contends.

Sunday shift. Ms. Compton asked to pick up a Tuesday shift from an employee who was unavailable, but without explanation, Ms. Woods refused. This reduced Ms. Compton's shifts from four to two per week, cutting her income in half.

Assuming, as the Court must, that Ms. Compton's hours and pay were reduced by fifty-percent as she attested, the Court finds that such reduction qualifies as an adverse action.

### 3. Causal Connection

In the final element of the *McDonnell Douglas* analysis, the employee must demonstrate that the materially adverse action was taken in response to the protected conduct. *See Bennett v. Windstream Communications, Inc.*, ___ F.3d ___, ___, 2015 WL 4126970, *6 (10th Cir., July 9, 2015); *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202-03 (10th Cir. 2006). That is, an employee must present some evidence that but-for the protected conduct, the adverse action would not have occurred. *Nassar*, 133 S.Ct. at 2534. Evidence of a causal connection may include "circumstances that justify an inference of retaliatory motive, such as protected conduct followed closely by adverse action." *Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 386 (10th Cir. 1984). Because there is often no direct evidence of a causal connection, a court may look to the temporal proximity between the protected action and the adverse action. *Argo*, 452 F.3d at 1202; *see also Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004). The case law does not definitively define how closely adverse action must follow protected conduct for a court to infer a causal connection between the two, but when an employee presents evidence of what is akin to a "pattern of retaliatory conduct" starting shortly after protected conduct, the "closely followed" temporal requirement is more relaxed. *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996).

Ms. Compton engaged in the purportedly protected conduct in December 2012 when she complained of sexual harassment after being firing. Her factual presentation therefore shows that her three female supervisors began their campaign of harassment – preventing her from eating or taking breaks – shortly after Ms. Compton's protected conduct. This is sufficient to give rise to an inference of a retaliatory motive.

The reduction in shifts, however, came some five to six months after she engaged in protected conduct, and ordinarily, this lapse of time would not give rise to an inference of causation based on "close temporal proximity" alone. But because Ms. Compton has presented facts from which a fact-finder could reasonably infer a pattern of retaliatory conduct, the Court will likewise find that Ms. Compton has sufficiently alleged a causal connection between her protected conduct and the reduction in her shifts.

### B. Legitimate, Nondiscriminatory Reason for Adverse Actions

Having found that Ms. Compton came forward with sufficient evidence for a *prima facie* claim of retaliation, the Court directs its attention to whether Pappas offers a legitimate, nondiscriminatory reason for the actions taken against Ms. Compton. At this stage, the employer's burden is "exceedingly light." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007). The Court merely examines whether the reason is nondiscriminatory without engaging in any credibility determination. *Fye v. Okla. Corp. Com'n*, 516 F.3d 1217, 1228 (10th Cir. 2008). Violations of company policies or failure to obey orders are examples of valid reasons. *See, e.g., Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007).

Pappas contends that Ms. Compton's food was disposed of and she was reprimanded for eating or taking breaks because she was doing so in a manner that violated Pappas' employee policies. In support, Pappas offers the testimony of Mr. Alaniz that health regulations requires

10

that employees keep their food in a specific portion of a "cooler" in "the kitchen." Ms. Compton was reprimanded because she violated this policy by storing her food in the bar cooler. As to the reduction in shifts, Pappas offered evidence that Ms. Compton was originally scheduled to work three shifts, including Sunday, because she "did not tell [Ms.] Woods she was not available to work Sundays." And Pappas states that Ms. Compton was "able to pick up . . . shifts . . . did so on numerous occasions," and that "[Ms. Woods] would not have automatically assigned [a] shift to an employee just because he or she asked for it." The Court finds Pappas' reasons facially nondiscriminatory.

### C. Pretext

Once an employer proffers legitimate reasons for any adverse actions, the burden then shifts to the employee to show pretext. *Timmerman v. U.S. Bank*, 483 F.3d 1106, 1123 (10th Cir. 2007). To do so an employee must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason," such that a rational fact-finder could conclude the reason was "unworthy of credence and hence infer that the employer did not act" objectively. *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012); *Fye*, 516 F.3d at 1128. For instance, an employee might show pretext through evidence that the employee "was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000).

To demonstrate pretext, Ms. Compton testified that the rules regarding food storage were not followed in practice and that she was treated differently from other employees. She testified that before she engaged in protected activity she was allowed to take breaks and eat food she brought from home. She identifies specific employees, Brian Thomas and an employee named

11

Ashley, whom she claims stored food in the bar cooler in violation of Pappas' policies, but did not have their food thrown away. And, more generally, she testified that "other bartenders did eat all the time and didn't get in trouble for it." Lastly, Ms. Compton offers evidence that when she contacted the HR Office to clarify the rules regarding employees' personal food, she was told that "it was not the policy" for supervisors to throw away her food. But, Ms. Compton testified, that notwithstanding HR's direction to her managers with regard to these policies, the managers' actions towards Ms. Compton did not change. Ms. Compton also contests the veracity of Pappas' reason for reducing her shifts. She contends that such a significant reduction in shifts was "unique to her"; no other employees' hours were so significantly reduced.

Taken as true, Ms. Compton's evidence creates a factual issue as to whether Pappas' justifications were pretextual. Inconsistency by her managers in prohibiting Ms. Compton from taking breaks to eat and throwing away her food, but not taking similar action with regard to other employees suggests a lack of objectivity on the part of Pappas consistent with a retaliatory motive. And, as for the reduction in shifts, Ms. Compton's testimony that only her shifts were drastically reduced, coupled with her evidence that the reduction was not her fault would give rise to a reasonable inference that cutting her shifts was also retaliatory.

Accordingly the Court finds that the evidence shows genuine disputes of material fact that require resolution by trial.

## V. CONSTRUCTIVE DISCHARGE

Ms. Compton also alleges constructive discharge. To succeed on a theory of constructive discharge, an employee must present sufficient evidence to show that her employer made working conditions so intolerable that a reasonable employee would feel she had no choice other than to quit. *See Strickland v. United Parcel Service, Inc.*, 555 F.3ed 1224, 1228 (10th Cir.

2009); *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004); *Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997).[5] The employee's burden is substantial; proving a materially adverse action will not necessarily suffice. *Tran v. Trs. of State Colleges in Colo.*, 355 F.3d 1263, 1270-71 (10th Cir. 2004). The test is an objective one; subjective factors such as an employee's feelings or employer's intentions are not relevant. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007). For example, that an employee considered her workplace unpleasant or stressful, or even unhealthy, is not an objective criterion the Court relies on in finding that a reasonable employee would have been compelled to resign. *Potts v. Davis Cnty.*, 551 F.3d 1188, 1195 (10th Cir. 2009). An employee's stated belief that her relationship with her supervisors was so sour that quitting was her best option does not alone create a genuine issue of material fact as to whether the employee truly had no other option but to quit. *See Baca v. Sklar*, 398 F.3d 1210, 1218 (10th Cir. 2005).

A court particularly considers the frequency and severity of the conduct, whether it interferes with the employee's work, and whether it is physically threatening or humiliating. *Harris v. Forklift Sys., Inc.*, 510 U.S. at 23 (1993). To assess the voluntariness of a resignation a court examines, based on the totality of the circumstances, whether the employee (1) was given an alternative to resignation; (2) understood the nature of her decision to resign; (3) had a reasonable time in which to decide to resign; and (4) was permitted to select the effective date of resignation. *Yearous*, 128 F.3d at 1356; *see also Parker v. Bd. of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1162 (10th Cir. 1992). For example, an employee who was offered reinstatement

---

[5] Demonstrating the necessary degree of adverse action for purposes of a constructive discharge claim is significantly higher burden than that which is required to show materially adverse action for purposes of retaliation. *See Pennsylvania State Police v. Suthers*, 542 U.S. 129, 146-47 (2004); *and compare White*, 548 U.S. at 68, *with Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 980 (10th Cir. 2008).

to the same position, with the same salary and benefits may have difficulty proving that his resignation was involuntary. *See Potts*, 551 F.3d at 1195.

Ms. Compton's constructive discharge claim is premised on the same conduct as those which form the basis of her retaliation claim. She contends that because of her supervisors' treatment and the reduction in her shifts, a reasonable employee would feel she had no choice but to quit.  The poor treatment that Ms. Compton suffered included, among other things, prohibition from eating or taking breaks, unwarranted reprimands, and humiliation. Ms. Compton particularly attests that Ms. Henderson's throwing away a cake given to her by a customer was so upsetting that she "had enough" and felt compelled to resign.

The Court appreciates Ms. Compton's frustration with this behavior. But evidence of animus in the workplace, harassment, or continual belittlement is not, without more, sufficient grounds for constructive discharge. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 981 (10th Cir. 2008). Such conduct may be sufficient to sustain a retaliation claim, but more is required for constructive discharge. *See Pennsylvania State Police v. Suthers*, 542 U.S. 129, 146-47 (2004). Though Ms. Compton might truly believe that her contentious relationship with her managers was sufficient reason to quit, she has not presented a genuine dispute of material fact regarding whether a reasonable employee would feel she had no choice but to quit.

Ms. Compton's evidence that her hours were cut in half is more troubling.  However, considering the totality of the circumstances, the Court cannot find her showing sufficient for a number of reasons.  First, Ms. Compton continued to work for some three months after her shifts were reduced.  She did not look for a similar job, but instead pursued a job in a field more closely related to her degree.  Indeed, she did not quit until she found a new job.  Moreover, following her resignation, Ms. Compton worked for another two weeks, stating that she wanted

to provide Pappas notice before leaving, undermining both her contentions based on intolerable harassment and insufficient hours. Lastly, and perhaps most compelling, Ms. Compton does not dispute that, when she resigned, she was asked to reconsider her decision. But she offers no evidence that during this conversation she informed Pappas that she would reconsider if she was given more hours or her supervisors' behavior improved, suggesting that she did not care to reach a mutually agreeable alternative before quitting. These facts all tend to show that her resignation was truly voluntary.  Ms. Compton has thus not met her burden to present evidence from which a reasonable fact-finder could find that an employee in her position would feel she had no choice but to quit.  The Court grants Pappas' request for summary judgment only in regard to the constructive discharge claim.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that Pappas' Motion for Summary Judgment (**#17**) is GRANTED in PART and DENIED in PART. Summary judgment is entered in favor of Pappas and against Kerri Compton on her claim for constructive discharge. Ms. Compton's retaliation claim shall proceed to trial. The parties shall begin preparation of a proposed Pretrial Order pursuant to Docket #16 and shall jointly contact chambers to schedule a pretrial conference.

Dated this 10th day of September, 2015.

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
Chief United States District Judge